The next matter before us is 24-6213 United States v. Ramdial. Good morning, Parent Toronto. On behalf of the appellant, Dwayne Ramdial. This case is about whether police unlawfully extended a traffic stop by conducting a suspicionless criminal investigation while waiting on records from dispatch rather than working on traffic tasks. The outcome of this case is directly controlled by this court's decision in the United States v. Frazier. There, this court explained that while a records check is outstanding, officers need to work diligently on remaining traffic tasks. They don't get a free period to conduct suspicionless criminal investigations. Counsel, can I just stop you there? But the district court found that there was no prolonged, inappropriately prolonged time, correct? So what do you do about that? Yes, Your Honor. Just the district court was wrong as a factual matter? The district court was wrong both as a legal and factual matter. So the district court found that the Sergeant James's detour did not prolong the stop based on its misunderstanding of this court's rule in Frazier, that an officer needs to work diligently on traffic tasks even when dispatch is running. And so when the district court found that there was no evidence that the stop had been prolonged, it was basing that on its misunderstanding that while dispatch was running, time couldn't be added to the stop. That's a legal error that the court made. I'm sorry. Please help me understand that. This court has explained that when a factual finding is based on a legal misunderstanding, that it's clearly erroneous. So what is the legal misunderstanding here? The district court held that because Sergeant James was waiting on records from dispatch, the detour couldn't have added time to the stop. Frazier makes clear that it doesn't matter whether a records check is outstanding. If an officer has traffic tasks or if the government hasn't proven there aren't any traffic tasks, as in this case, the officer needs to be working diligently on those traffic tasks and a detour adds time to the stop even if dispatch is running. Dispatch running the check does not provide the outer limit of the time is what you're saying, I guess. That is what Frazier says. Yes. It's the government's burden to show there was the stop didn't, or excuse me, the detour didn't add time, and it doesn't matter that dispatch is running because it's not enough. But isn't that part of the, so you're saying the dispatch running the check, that was illegitimate? No, Your Honor. I'm not saying this. To be clear, this is this court in Frazier saying. Okay. As your interpretation of Frazier. Yes. So dispatch running a check is not treated, this court doesn't treat it as a second officer on the scene that's diligently working on traffic tasks and therefore fulfilling Frazier's requirement that an officer on the scene be working on traffic tasks. Otherwise, the stop is prolonged. Because Sergeant James wasn't attending to traffic tasks while he was waiting on dispatch, those traffic tasks get displaced, and therefore he's prolonged the stop even if the dispatch's check is still running. What tasks did he have left to do? Your Honor, first, it was the government's burden to show he had no tasks remaining, not our burden to show that he did have tasks remaining. But there are a number of plausible tasks that he could have had. He could have been deciding what enforcement action to take, writing up a ticket, writing a warning, checking the vehicle, checking the insurance. He could have returned Mr. Romdahl's license. And those are all tasks that he put off while he went on a suspicionless investigative detour. And the government never proved that he didn't have those tasks. Didn't he testify at the suppression hearing and say that he had decided he wasn't going to do anything in writing in terms of either a citation or a warning, a written warning? And, you know, I guess I would think it would be pretty common that a lot of these checks are just done by dispatch and they're just looking to make sure there are no warrants, valid license. And beyond that, if they're not going to issue a warning, they just wait on dispatch and they don't return the license until they have that information from dispatch. So I'm kind of at a loss to understand what it is you think Sergeant James should have been doing during that time when he decided he wasn't going to issue anything in writing. Your Honor, there is no testimony that he had made that decision. He, in fact, testified to the opposite, that he hadn't decided what he was going to do and he should have been working on making that decision. He also could have been checking, verifying the insurance, and he testified he typically does that but couldn't say that he had done that in this stop. And then, outside of that, he could have, if he had decided he wasn't going to do a written warning or a written citation, there are likely still documentary tasks to be done. It seems implausible that officers don't, can just issue a verbal warning and don't document it because then the next time you pull that person over, you don't know if you've stopped them. And also many offices have policies that would require that documentation because Well, there's nothing in the record about that. No, because the government did not raise this argument or prove it up. Well, they did at this suppression hearing, as my colleague has indicated, testify that he was considering just giving a verbal warning. Then there would be nothing to do. I mean, you say there would be no record of the stop. There's a record of the stop because he called it in when he pulled him over and then asked for a license and warrants check. So there is a record of the stop. Well, Your Honor, I think what I mean by a record of the stop is I've pulled this particular person over for this reason. I've made it, you know, I've decided on X and Having gotten a verbal warning in my past, I don't recall, I mean it's Well, I would think it would be something that's internal It's like, you know, slow down and go. Yes, Your Honor, I would say it's likely something that's internal so that the next time that they pull you over and are deciding whether to give you a verbal warning, they can look it up and say, oh, I've stopped this person before. Or they're trying to make sure they're not discriminatorily making stops and they're keeping track of who they're stopping. This is all some facts that the government could have explored at the suppression hearing. If he had definitively testified, I had decided to give him a verbal warning and there was nothing more for me to do, then you would agree there was no violation here, right? Your Honor, I don't think I would agree. I would think he would need to have testified. There were no tasks that he would have needed to do if he were going to give a verbal warning. I think I just said that in the hypo. Oh, excuse me. Then yes, I think if he truly had nothing to do, he didn't rush and he was being diligent in executing his traffic tasks, I think in this case there likely would not be a violation. However, this court has sort of left open the possibility that calling dispatch at the end of a stop where there's nothing left to do actually could be leveraging traffic tasks in order to facilitate an investigation. If all the officer is going to do is begin a suspicionless criminal investigation, this court in Mayville at least left that open. But we didn't brief that here. Well, and we've also pretty clearly said that it's part of the normal tasks to do the records check, make sure he's got a valid license, make sure there aren't any outstanding warrants. So assuming that was proper, if he had decided to just give a verbal warning, it may not have extended the stop at all. Yes, Your Honor, I think it may not have, but it was the government's burden to prove that, and they didn't attempt to do so. They never attempted to say, they never elicited testimony that he was absolutely going to issue a verbal warning. He, in fact, testified to the opposite, and they never elicited testimony as to what traffic tasks he would have had to do with respect to each enforcement action and whether a verbal warning would have eliminated any traffic tasks. And it was their burden under Frazier to do so, because he used the entire amount of time that he had on a suspicionless criminal investigation. Do you agree, though, the video from the dashboard seems to show that the moment he gets into his patrol car, he calls dispatch to have them start running the license and check for warrants. And then right when dispatch calls back, he opens his door and goes up and talks to Mr. Romdahl. So, I mean, first of all, do you agree with that point? There's no wasted time or any prolonging of the stop from the moment he enters his patrol car and exits, because he calls dispatch immediately and leaves the car once they report back. Your Honor, I think I'm not quite understanding your question. So we're talking about how long the duration of what you're calling the tasks had to take for him to do. I'm saying I've watched the video, and it seems to me Sergeant James gets into his patrol car and he immediately calls dispatch. So there's no delay. And then right when dispatch calls back and reports back to him, he then immediately gets out and goes and engages Mr. Romdahl. Do you agree with my sort of recitation that there's no investigatory actions being undertaken from the moment before he calls dispatch or after he hears back from him? Would I agree that there were no investigative actions between? There was no prolonging. No, Your Honor. I think those three minutes were minutes that he could have been working on traffic tasks, and the government didn't establish he'd. But you're speaking of traffic tasks as if there's this checklist of things that every officer must do. Is there any case that says that? Because I read the cases to say once an officer pulls someone over in a traffic stop, there are things they're permitted to do, such as check for warrants, make sure they have a valid license. But there's no list of tasks that Sergeant James had to complete, is there? No, Your Honor. I don't think there's a list of tasks that he had to complete. But Frazier makes it clear that he can't just detour without actually focusing on the task. He needs to focus on the task at hand. And if the government hasn't established that he was truly done with the traffic stop when he called dispatch, I think that was their burden to prove. Isn't your problem with Frazier that, and this goes to the question I was asking about him calling dispatch and the timing of that. In Frazier, the officer waits to call dispatch for three minutes, instead undergoes actions that are investigatory in nature, and then three minutes later calls dispatch. But that didn't happen here, did it? No, Your Honor. But in Frazier, the court then goes on to say that the government hadn't proved that the LPR search or his diesel search didn't add time to the stop, even though it was conducted while dispatch was running. So it wasn't just that he had initially done that, spent those three minutes texting the K-9 for the K-9. It was that after he called dispatch, he went on a detour by looking through a diesel search. Excuse me, doing a diesel search. And in doing that diesel search, the court found that added time to the stop because he wasn't working on traffic tests during that time. That's indistinguishable from this case. Sergeant James called dispatch, and then he goes on a detour. Those three minutes, just as in Frazier, add time to the stop. Well, they add time to the stop if he had to do tasks after he got the report that could have been done while he was waiting for the report. Yes, Your Honor. And you're saying that it was the burden of the government to show that there were no such tasks that had to be performed and that, therefore, there was no extension. Yes, Your Honor, exactly. And we argue the government had the opportunity to make this record and make this argument, and they did not below, and that there's no factual record. As a result, there's no factual record for this court, even if it were to want to entertain this argument to make the findings that the argument requires in order for the government to win. So for those reasons, we would request that this court reverse the denial of the motion to suppress and direct the evidence to be suppressed. Thank you, Sergeant Ranger. May it please the court. Tanner Herman on behalf of the United States. I think it would be pertinent to begin with a look at the record in this case. It's been asserted here that there was no testimony that this officer was ever going to give Mr. Ramdial, intend to give Mr. Ramdial a verbal warning and let him go after he received the all-clear from dispatch. And so in reference to this, on page 30 of Volume 3 of the record, the AUSA below is questioning Sergeant James about this moment where he receives the all-clear from dispatch. And I'm going to read from the record here, beginning with a question from the middle of the page. Question to you.  So at that point, for the purposes of the traffic stop itself, if you were going to write a warning, that would be when you write the warning and let Mr. Ramdial go. Is that fair? Answer. Warning or citation? Yes. Question. Had you made the decision of what you were going to do at that point? Answer. Yes. Question. And what was that decision? Answer. That decision was that the traffic stop was over at that point for me. Question.  Answer. And that I was going to, that I, obviously, I would give a verbal warning. So he's clearly asked, what did you intend to do? I intended to give him a verbal warning. And would you have, after dispatch got back to you on this, gone to that vehicle, given him a verbal warning, and let him go? Now, I believe this testimony is pertinent because the district court finds in its order, discussing when the Rodriguez moment occurred, i.e., when he needed to have reasonable suspicion in order to continue to stop, that that occurred when dispatch came back with this all clear, because at that point, all traffic-related tasks were complete. And it goes on to say, the sergeant acknowledged as much in his testimony. So what we're dealing with here is a factual question as to whether this prolonged the stop. And that's clear from this court holding in Malone, which predates Frazier and is, to the extent Frazier is inconsistent as to whether this should be a factual or legal question, Malone, as the earlier panel opinion controls here. And so the district court relied on this testimony, concluded there were no tasks left for the officer to conduct, and therefore that his actions prior to this, which all occurred while he was awaiting for the all clear from dispatch, did not add time to the stop. This holding was not clearly erroneous, and this court should affirm on those grounds. Now, there's another crucial distinction here insofar as how this case relates to Frazier. So true enough, in Frazier we had three minutes of the officer attempting to arrange for a dog sniff and not attending to any traffic tasks. Now, on that first portion of Frazier, there's a clear distinction because there's no forward action being conducted at that point. There's no records dispatch in which he's awaiting. He's not awaiting for the driver to produce anything. He has completely halted the stop in order to attempt to arrange for a dog sniff. Now, we go to the end of Frazier, and what has happened to this opinion, which is primarily a reasonable suspicion opinion, is that the government comes in and argues, well, the later license plate reader search could have supplied reasonable suspicion for the earlier attempts to arrange for a dog sniff. And what this court concluded correctly is that, no, the later action does not supply reasonable suspicion for earlier conduct. But it then goes on to make an ancillary finding, that the government's argument that you can consider the LPR search because it didn't add time to the stop was wrong, because in its opinion the government needed to show that the stop would not have ended sooner if the officer had not engaged in that LPR search. So looking at the facts of when that LPR search occurred, they are thus. The officer calls in a dispatch, calls in records check to dispatch. He then engages in the LPR search. And then afterwards, he attends to another traffic-related task, which is that he verifies the driver's rental agreement. And in that case, the driver had said, I don't have my rental agreement. Here's the information. You can verify it yourself. So there's a marked distinction between that case and this case, in that there is at least one traffic task that was remaining prior to, or after he engaged in the LPR search. Here, there is nothing. And it turns on whether, in fact, it's clear he was going to give a verbal warning, right? Yes. If he had to write a ticket or even a written warning, then he couldn't divert from the task to do an investigation if it prolonged the stop. Yes. If he could do both while he was waiting for dispatch, he'd be okay. But if he waited during dispatch, he did his investigation, and then he had to write a ticket, you would agree that it extended beyond the Rodriguez moment. Yes. I think if he had delayed that secondary task, and that secondary task was he was even for two seconds, he needed to finish writing that ticket after dispatch came back, then he would have prolonged the stop. And Malone makes clear that there's no de minimis exception to this. The question is whether or not you could complete all that conduct at the time that that sort of parallel action was ongoing. And here, we think the evidence clearly shows, and this is an evidentiary question, that all of that was done within that time frame. And so there is no evidence that this added time or prolonged the stop. Unless there's any more questions from this court, we'd ask that you affirm. No. Thank you. Just a couple of points, Your Honors. I first want to make clear that the government is incorrect, that the district court found that absent the detour, Sergeant James would have issued a verbal warning and thus had nothing left to do. That's not what the district court found, and there was no evidence from which the district court could make that finding, because the government didn't make that argument below, and it didn't offer any evidence on that particular point. The district court, in finding that a Rodriguez moment had occurred after the all-clear, is merely recognizing that everything after that moment that Sergeant James did was investigative and could not be described as traffic-related. And therefore, he did need reasonable suspicion at that point. But that's not an independent finding, that he had no tasks absent the detour, and if he had foregone the detour and he had focused on the task at hand, he would have had nothing left to do. I want to make crystal clear about that. It was the government's burden to show that, and they didn't attempt to make that showing. They didn't even raise this argument. Again, we would ask this court to reverse and instruct discretion. Thank you. Thank you. We will take this matter under advisement, and we are going to take a short break.